UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :
                                  :
         v.                       :   Crim No. 3:05cr325(AHN)
                                  :
SCOTT SACANE                      :
                                  :

## RULING ON MOTION FOR AN ORDER DIRECTING SCOTT SACANE TO PROVIDE CERTAIN RELEVANT FINANCIAL INFORMATION FOR PURPOSES OF THE RESTITUTION HEARING

The defendant Scott Sacane ("Sacane"), the former investment advisor to the Durus Life Sciences Master Fund Ltd., Durus Life Sciences Fund, LLC, and Durus Life Sciences International Fund Ltd. (collectively "the Durus Funds"), pleaded guilty to a one-count information, charging him with violating the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6 and 80b-17. The Durus Funds are seeking restitution for the losses caused by his crime. The Durus Funds have now moved pursuant to the Crime Victims Rights Act ("CVRA"), 18 U.S.C. § 3771(d)(3), for an order directing Sacane to provide more detailed financial disclosures in advance of the restitution hearing scheduled for April 4 and 5, 2007. The Durus Funds claim that in connection with their attempts to reach an out-of-court settlement with Sacane regarding restitution Sacane provided inaccurate and incomplete financial information regarding the assets he and his family own. Although Sacane's assets are not relevant to determining the amount of restitution, see 18 U.S.C. § 3664(f)(1)(A), the Durus

Funds argue that the information they seek regarding Sacane's financial situation is relevant to a payment schedule, which they say the court may set for payment of the court's restitution order.[1]  The Durus Funds claim that without a court order compelling more detailed disclosures, the court will not have an accurate picture of the assets available for purposes of setting a payment schedule.[2]

---

[1]  The restitution statute, 18 U.S.C. § 3664(f)(1)(B)(2), states that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of" the defendant's assets, projected earnings or other income, and other financial obligations.  As the Second Circuit explained in United States v. Nucci, "[a] district court may properly order a schedule of restitution payments either by remaining silent as to the timing of payment, which would make such payment due in full 'immediately,' 18 U.S.C. § 3572(d)(1), or by setting forth a clear schedule."  364 F.3d 419, 422 (2d Cir. 2004).

[2]  The Durus Funds ultimately seek a payment schedule compelling Sacane to immediately pay as much restitution as possible because, according to the Durus Funds, "they are not involved in active trading and are being kept alive at a cost of nearly $1 million per year, only because of the need to address the numerous problems arising from Scott Sacane's crimes."  The Durus Funds, therefore, assert that they will be liquidated shortly after restitution is ordered and that a front-loaded restitution payment schedule would maximize their recovery because "once the Durus Funds are liquidated, investors in the Durus Funds may find that it is not economically practical for each of them to pursue their pro rata share of Mr. Sacane's future assets after he gets out of jail."  But the Durus Funds also state in a footnote that, upon dissolution, they intend to assign any rights to future restitution payments to a trust or some other entity for the benefit of their investors.  Therefore, given that the Durus Funds will create an entity for purposes of facilitating recovery by investors, the court is uncertain at this time why investors would find it impractical to recover their pro-rata share without a front-loaded payment schedule.

The Durus Funds' reliance on the CVRA, which allows a crime victim to enforce certain rights enumerated in § 3771(a), is misplaced.  Although § 3771(a) grants crime victims, inter alia, "[t]he right not to be excluded from any such public court proceeding," "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing," and "the reasonable right to confer with the attorney for the Government," it does not grant crime victims a right to discover financial information from a defendant.

The Durus Funds do not identify a specific statutory provision of the CVRA that authorizes the discovery they seek.  Rather, they argue that they have a general right to financial information under the CVRA and also that the court has the power to order Sacane to make financial disclosure under another restitution statute, 18 U.S.C. § 3664.  Their arguments are without merit.  Courts have consistently held that a crime victim does not have the right under the CVRA to obtain information contained in a presentence report. See In re Kenna, 453 F.3d 1136, 1137 (9th Cir. 2006) (rejecting the argument that "§ 3771 of the CVRA confers a general right for crime victims to obtain disclosure of the [presentence report]"); United States v. Ingrassia, No. CR-04-0455ADSJO, 2005 WL 2875220, at *17 (E.D.N.Y. Sept. 7, 2005) (declining to recommend disclosure of a presentence report under the CVRA).  If the CVRA does not provide

crime victims with a right to disclosure of the presentence report, then a fortiori it would not provide crime victims with a right to obtain such disclosures directly from a defendant. Indeed, as the court in United States v. Ingrassia noted, the CVRA does not provide a mechanism for crime victims to obtain information from a defendant; rather, it was enacted to give crime victims an efficient means by which to provide information to the court and, as necessary, get information from the government for that purpose:

> The Senate Debate supports the view that the framers of the CVRA intended that the right to be heard would be a mechanism for victims to provide information. To the extent victims might wish to obtain information on which to base their input, the contemplated mechanism for doing so was conferral with the prosecutor rather than the implicit creation of an affirmative disclosure right . . . .

2005 WL 2875220, at *17 n.11; see also Fed. R. Crim. P. 32(i)(4)(B) (describing a victim's right at sentencing "to speak or submit any information about the sentence").

If the Durus Funds believe that additional financial disclosures are necessary, then pursuant to the CVRA they may enlist the assistance of the government; but they are not permitted to bypass the government and discover information directly from Sacane. See 18 U.S.C. § 3771(a)(5), (c)(1) (stating that the government prosecutors "shall make their best efforts to see that crime victims are notified of, and accorded,

the rights described in subsection (a)"); Ingrassia, 2005 WL 2875220, at *17 (stating that "the CVRA plainly puts an interested victim in a position to get [such information] by establishing an enforceable right to confer with the prosecutor"); but see § 3771(d)(6) (stating that, despite a crime victim's rights under the CVRA, "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction").

Furthermore, the Durus Funds's reliance on § 3664(d)(4) as a vehicle to invoke the court's "discretion to order discovery to ensure the fairness and accuracy of the upcoming Restitution Hearing" is also unavailing. While the court may, pursuant to 18 U.S.C. § 3664(d)(4), "require additional documentation" from Sacane for purposes of supplementing the financial disclosures he made to the U.S. Probation Office as part of his presentence report, nothing in that statute suggests that the court has the discretion to order Sacane to turn over such financial information to the Durus Funds. Indeed, this statute states, "[t]he privacy of any records filed, or testimony heard, pursuant to this section shall be maintained to the greatest extent possible, and such records may be filed or testimony heard in camera." Id.

Moreover, even if the court had the discretion to order a defendant to turn over financial information to a crime victim,

the Durus Funds' request is largely repetitious given the fact that the government has served both Sacane and his wife with subpoenas requesting, according to the Durus Funds, "the production of many of the same documents sought in the Durus Funds' application." Therefore, the order that the Durus Funds seek is not necessary to "ensure the fairness and accuracy of the upcoming Restitution Hearing." Accordingly, the Durus Funds's [doc. # 73] motion for an order directing Sacane to provide certain relevant financial information for purposes of the restitution hearing is **DENIED**.

SO ORDERED this 28th day of March 2007, at Bridgeport, Connecticut.

>                    /s/
> Alan H. Nevas
> United States District Judge